My name is Bern Conley and I represent the Public Entity Risk Management Authority, PERMA, formerly known as the Coachella Valley Joint Powers Insurance Authority. I would like, if I may, to address the issues in the same order as the district court order, which would be jurisdiction first, and then race judicata and third party beneficiary next, and then the substantive issues within the memorandum coverage itself, if I may. Now, the leading case cited by the district court for jurisdiction is the Argeno case, and I wanted to make a couple of comments about Argeno. First of all, Argeno, as far as I can tell, is the only case reported anywhere that allowed bringing in an insurer on something other than diversity jurisdiction. In Argeno, they brought in the city on a Section 1983, 14th Amendment due process claim for not paying the judgment, and they brought in the insurer under this theory of interrelationship of the facts. It should be noted, however, that there was diversity with the carrier in that case, and therefore, it was dictative to use subject matter jurisdiction on an ancillary basis. Why doesn't the district court have jurisdiction under 28 U.S.C. 1334 as it relates to bankruptcy, because the matter is related to bankruptcy? That jurisdiction wasn't asserted by the court. We weren't brought into the bankruptcy court. No, but the district, why couldn't the district court, why wouldn't the district court have jurisdiction under 1334? Well, initially, I would say that we don't owe a debt to the bankrupt debtor, for one thing, and there's no claim that we owe a debt to Silver Sage, so I don't know. No, but wouldn't you agree the action's related to the bankruptcy? No, I wouldn't, because the PERMA does not owe an obligation to the bankrupt debtor. But if PERMA is required to pay something toward the judgment, that will certainly affect the bankruptcy. Let's say you paid $3 million to Silver Sage, that would reduce the city's obligation, and that would certainly impact the bankruptcy, wouldn't it? I'm not certain that it would reduce the obligation, because it would simply result in another claim by PERMA against Silver Sage taking the place of plaintiff's claim, saying, you owe us that $3 million back because we beat you at arbitration, so I don't think that it would actually reduce. Well, we'll let Silver Sage speak for itself, but there's an argument on supplemental jurisdiction that the district court would have jurisdiction over a garnishment claim, for example. Use your example of a claim against an insurer. Let's assume that an insurer has an insured. The insured negligently injures somebody. There's a judgment against the insured, and the insurer refuses to pay. All right. It seems to me the injured party could seek to garnish that obligation, similar to going to after a bank account. It's money owed to the, at least indirectly, to the insured. So the injured party simply goes after it. The injured party goes after the insurer in a direct action. The insurer. Right. Just like you go after a bank to get a bank account. So that's an action brought into state court under state law. Well, but not necessarily. In other words, what you're saying is what they're arguing. I'm not saying they're right, is that that's a form of garnishment, as I get it. And what you're saying is it's more of a direct action against the insurer by the injured party. Exactly right. And it's not based on any civil rights violations of pure contract action. But if the effect of that, I think, is Judge Silverman's point is the city can't collect that judgment more than the silver stage can't collect that judgment more than once, no matter who it collects it from. It gets one one. So if you go around the direct action against the city and sue the insurer, then it seems to me you're affecting the bankruptcy by reducing the city's obligation. Because you collect three million bucks from the insurer, the city's better off. And that certainly would adjust the debts that have to be paid in the bankruptcy. I understand the argument. I can only respond that the district court did not invoke bankruptcy court jurisdiction. She relied on our general. And that's what I'm trying to. Yeah. And I'm not sure. I don't know if we could be brought in by the bankruptcy court. But if we go into the bankruptcy court, it will be on a claim by the city against us and we'll raise the arbitration as a defense. But I'm not I'm not sure I'm not to blame her. I'm not sure the city raised this or anybody. Silver Sage raised this as a basis of jurisdiction to related to argument under 1334. But if it had been raised, it seems to me there's a pretty good argument that that you could at least get in the door. Well, if this case is dismissed for lack of jurisdiction and they bring us in the bankruptcy court, I think we could litigate that. But standing here off the top of my head, I can't tell you the answer under the bankruptcy statute. I hear you on that because I'm having a problem with all this and see if I'm tracking you. This is a collection matter, pure and simple. They're trying to execute on a judgment and they're trying to rid of garnishment against you. But as I understand the record, if I'm not wrong, the judge took supplemental jurisdiction, used a writ of garnishment proceeding to say to you they can go after the money allegedly that you hold. However, as I understand, the city's never made demand for you for indemnity number one and there's no contractual liability between you and the city. So there's no third party to step in the shoes of the city to go after you to garnish. That is our argument. Okay, and if that's the case, then the judge using supplemental jurisdiction and garnishment was in error. Let's assume we get there. Okay. And so therefore, we would reverse that. However, the bankruptcy issue, as I understand your argument, is separate. If Silver Sage wants to take the next shot, it's up to Silver Sage. But at this point, the judge relied on supplemental jurisdiction, not in a bankruptcy matter, to go through a writ of garnishment to try to get to a debt that isn't owed or has never been owed. It's been demanded. Exactly. And I would trace the question this way as well. It's not did the parties intend to bind Silver Sage to an arbitration. It's did they ever intend to create a right for Silver Sage in the first place. The very paragraph allowing a third party to bring an action against PERMA says you can bring an action to the extent of coverage afforded under this agreement. The very next page deals with how you determine whether there's coverage. You have binding arbitration that's final and not subject to any appeal. So there's no intent here to create a third party beneficiary status when there's been a determination of no coverage. And we believe that the court erred then in bypassing that portion of the argument and taking it upon herself to determine the coverage issues. Because in doing so, she had to reach substantive issues that were basically a separate case. This is not like Illinois law in our general where you can join an insurer in the underlying action. In California law, you have to bring a separate action subsequently against the insurer. That's the very nature of 11-580-B-2 of the insurance code. So if you're right about the supplemental jurisdiction or the lack of supplemental jurisdiction, if you're right about that, we would be bursting them. What happens then? How does this play out? That would be the end of the garnishment order. I can't promise someone wouldn't sue us under a different theory or in bankruptcy court. Given the history of this litigation, I'd decide which side of that. Well, after I heard about the vote, I actually felt pretty good. So it could be that it's paid first by, if it's paid first by the city, then there's no reason for a plaintiff to come back against us. I only have a couple of minutes left. I would, obviously, we want you to take the- Can I stop there just a second? Because you said something very significant. Nobody's played a hand in paying anything. And it sounds like to me you're at the tail end of this game. So until somebody plays a hand and until something is paid, it sounds like you're saying there's no obligation for you or you're not even in this game until something happens. In other words, nobody's paid anything here yet. Yet they're asking, they're leapfrogging around the city to you to say, well, you've got the deep pockets and you've got the insurance company, so we want you to pay before there's been any determination made here. Through the bankruptcy process, it's now ongoing, which has never even established a payment plan. Exactly. And the judgment's there, but it's never been executed on other than the fact that the garnishment is attempted around the debtor city to you. That's right. I see I only have a minute and a half I'd like to reserve. Well, you had 20 minutes to start with. I think you've got 11 minutes. Oh, I'm sorry. You don't have to use it. Sure. No, you can give it back. I'll talk fast. I wanted to. Obviously, the Argeno has a dissent which relies on the Supreme Court case of Hook. And I think Peacock pretty clearly revived Hook in its majority opinion. It does string cite the Berry line that says you can't bring in somebody on this insular jurisdiction and the Argeno line. I think it's pretty clear which way the Supreme Court's going, that it's limited. The Thomas Head case at the plaintiff's site is a case where the debtor is trying to transfer the very property that was fraudulently deprived by the deeds of trust. And so I can see a reason for ancillary jurisdiction there. But I can't find any reported case that allows an insurer to be brought in under this ancillary jurisdiction theory, much less a city school. Now, as I mentioned, the Vandenberg line and the race judicata, I think that the question's been reversed here. It's not whether we're shutting them off by the arbitration. It's whether there's been a creation of any right in favor of SilverSage in the first instance under the coverage agreement. Since the right to bring a third party action is limited to the extent of coverage afforded under the agreement. Vandenberg talks about the equities of the situation. But in Vandenberg, you had a clear agreement among the insurer and the insured that we're going to go arbitrate liability, but reserve all of our rights regarding coverage and litigate them separately. So you had a clear intent there by the contracting parties that went into arbitration that they were going to reserve those other kinds of coverage issues until later. The district court relied on the idea that SilverSage didn't have any control over the arbitration. But that's not the test under Clemmer. Clemmer never talks about, much less Dominguez, but never talks about control. Instead, it says, are the issues identical? Is there a final judgment on the merits? And is there privity? Privity being a community of interest. The city had exactly the same interest in finding coverage as plaintiff did. It wasn't somebody who was adopting a plea to stay out of the mental hospital instead of criminal or some other kind of thing where the city had an interest in doing less than finding more coverage. It should be mentioned that the decision of the board of directors of CURMA not to provide coverage in this case under the risk sharing agreement, which is not insurance, it's all going to be spread to other cities, was unanimous, as was the panel, including the party arbitrator selected by Desert Hot Springs. Here, we've got the same claim. Vandenberg spends a long time talking about issue preclusion, but says in passing, we're not talking about claim preclusion, that's still intact. And here you have the identical claim, the claim for coverage under the agreement. Now, there are three different areas of coverage that the judge took on substantively, the land use planning language, the expected or intended language in the personal injury coverage, and the intentional discrimination exclusion. The land use planning exclusion was drafted to cut out an entire activity, an entire sphere that's not covered, much like the employment practices exclusion. There are some things that are not shared under the risk sharing agreement. It doesn't matter that the city acted in excess of its authority or it acted with a discriminatory motive. If it's a land use planning decision, it's excluded. And in fact, the exclusion is needed exactly in those areas where you have a city acting in excess of its authority or where it's acting with a discriminatory intent. There is some discrimination coverage under this memorandum of coverage, but that's, for example, when a police officer arrests someone and discriminates, arrests someone based on their race, and the city's vicariously liable. But when you've got the city council sitting as the governing body, that is the city acting,  The reasons that were given by the city council in this case are all classic land use planning decisions. In fact, they copied them from their earlier attempt to deny a conditional use permit. The kind of financing that we're talking about here comes under the title and chapter of the government code called land use planning, land use regulation. I'm sorry, planning and land use and planning and zoning. The state anti-discrimination statute that plaintiffs sued a state court over comes right under that chapter on land use planning. Now, the district court found that there was no evidence that the city was substantially certain it would lose. That's not the test under California insurance law or in particular under the law relating to joint powers authorities. In the South El Monte case, you had a city council that voted to adopt a noise ordinance that effectively shut down a business next to one of the council members' houses, and the court found expected or intended harm because the direct result was intended by the city. It didn't matter that there were consequential damages beyond the expectation of the city. The direct harm, the direct thing that violated the civil rights was expected. Finally, the court talked about intentional discrimination and said that there's no way to know whether the jury found intent or not. We think there's overwhelming evidence of intent, at least in this record, but even under the court's reliance on Argeno,  it's not enough for the district court to say I can't decide. If the court can't decide, it has to decide. In this case, it should have decided based upon the only evidence in front of it on the motion that this was intended or expected harm and that this was intentional discrimination. If this isn't intentional discrimination, nothing is. A city council directly acting against the advice of its city attorney with a warning from the plaintiff and with all these comments that are discriminatory in nature. If you can't find intentional discrimination here, then those words are read right out of the memorandum of coverage. Finally, I would submit that under the Tort Claims Act, this is a state law substantive claim. As we pointed out, Fielder v. Casey requires a tort claim when you get a substantive state law claim. We're not being sued under the Fair Housing Act. We're being sued directly for a contract claim, and that requires a tort claim. I need to emphasize that this ruling does violence to the intent of the parties. The parties adopted arbitration in order to settle these things. If you come back 10 years later and you hit a pool like this, it causes a lot of other consequences. The pool is not made up of the same exact cities from year to year. Some cities leave. They may get some coverage somewhere else. They may join. The money from 1989-90 has already been distributed. That year was closed out. Then 10 years later, after the parties have been relying on an arbitration agreement, if you can come along and separately litigate it, it doesn't allow for any financial planning on the pool. And it threatens, well, first of all, it undermines the entire arbitration clause. There's no purpose in having arbitration if it can be entirely relitigated years later. Well, let me ask you a question. The arbitration found that you had no duty to defend nor to indemnify, no coverage, right? Right. So now you're sitting over here with that finding in accordance with your contract with the city that says your dispute should be arbitrated, right? The third party now, Sage, comes in and says, well, I want to garnish them because they have this contract to insure, if you will, in a general sense, the city. And you're saying if you allow that to happen, the city with our contract of insurance has been denied under arbitration. But now in the courts, they'll just go around that and find that I'm liable or we're liable for some money to the city for this act. Right. Okay. Assuming that that can be done and that there's no issue of preclusion here, there still is no money that you're holding to be garnished. Isn't that correct? That's right. That's right. Even if you get around all that other stuff, there's still no identifiable money that you're holding because you owe it to the city, and garnishment is going after somebody holding money for someone else that you're entitled to. That's our argument. With that, I submit and reserve my last four minutes. Thank you. All right. Thank you. Thank you. It seems to me that the dispute, if there is one, over the Federal Rule 69, use of that procedure really stems from PERMA's argument, really, that they could only be liable for the judgment or pay the judgment if they were actually made a party to the judgment itself. What did you ask in your garnishment? What did you allege that PERMA owed, or why did you say that PERMA owed you so that you could garnish it? We said that they had policy benefits which benefited the judgment creditor, and that both the city under state law and also PERMA intended to benefit us. That's the theory. So you're a third-party beneficiary? Of both parties. That's correct. Of PERMA's as well as the city's. PERMA likes to continuously argue that we are only the city's beneficiary, but the law is that that type of provision. So, and in garnishment, you're saying that PERMA is holding money that belongs to the city? Not precisely. What we're saying is that they are holding a policy which provides benefits to Silver Sage. How do you pay the judgment and garnish those funds? I mean, how do you garnish a policy? There's no funds there for you to garnish. You're saying they have some rights that are owed in these contractual arrangements, but there's no money being held there by PERMA for the city to satisfy this? Well, that's what PERMA's documents say they're doing, is they're holding money to pay judgment. Which owes them lots of money for lots of cities, right? They're holding money for that purpose, though, to pay judgments. So it's a general fund that's allotted to cities to pay judgments, and you're entitled to garnish it. Well, they've provided that there is money there for that purpose. That's precisely why we went after it. I mean, they could have, especially... It's kind of a holding company, like the court is. They've got money that's been liquidated for your damages, and you can go get it. Well, that's what PERMA agreed to, yes. That's what we... So anybody who's got a claim against any city can go and garnish PERMA there. They've got all this money sitting in this pot, so anybody can hold it. That way, when you finally resolve whether there's any money owed to the city, you've got the pot to get it from. Well, assuming that they have that provision in their policy and assuming further that you have a covered claim and so forth, yes. I mean, they would be able to... I don't know that there's a practical limit under PERMA's policy as to how many judgments they're responsible for. I didn't see any when I reviewed the policy or the memorandum of coverage, I guess it's called. What they say is, is that if you have a covered damage claim for personal injury and it covers discrimination and so forth, then we will pay that if you have that, if you meet the precondition of having a final judgment against one of our insurers. And it doesn't say there's only one of those or there's five of those or there's a limit in terms of the pot of the money, as I understand it, and that's the practical limit. But there's no limit actually set forth in the policy itself. So that's the basis upon which they were brought in. But anyway, my original point was, I hope I've responded to what you're asking, but my original point was that the theory under which PERMA was brought in to court was that they had contracted to pay that kind of judgment, not that they were... And you're saying PERMA directly saying you contracted, therefore, I want the money that you contracted to pay to the city. Yes, I think that's right. I think that's right. Well, what's the impact of the arbitration on that claim? In other words, as between the city and PERMA, there's a binding decision that PERMA doesn't owe the city anything. So don't you have to create some new right? Because you can't piggyback the city. The city has nothing. So you have to create something new, don't you? Well, we don't create anything new. We simply point out that that's what the parties agreed to. They agreed to pay judgment creditors. Well, that's exactly right. But there's a decision between the two of them, the two parties to the contract that says that contract does not cover your claim. Okay, so now how do you get around that? Well, they adjudicate the city's rights. They didn't adjudicate ours. But by garnishment, you're claiming a derivative right, aren't you? It's not derivative in the sense Your Honor is arguing. It's derivative, I believe, because both parties intended to benefit the judgment creditors in these situations. That's why they put that provision there. We would have never had any opportunity. And as a practical matter, I don't know how the arbitration would ever play out other than the way that it did here. Because obviously at the time the arbitration occurred, which was 1993, I believe, we were in the middle of, I think it's fair to say, hard-fought litigation with the city. I want you to represent you with my insurance company because what you're saying is they have an absolute liability regardless of the terms of their policy. It's an absolute policy to pay all judgment creditors of the city, period. Well, I don't think I quite said that. Sure, because they said there's no coverage under the arbitration. Yet you're saying there's an absolute payment due to you because they have a contract with the city, regardless of the terms of the policy. So that's a heck of a policy. I'd like to buy one of those. I mean, if an insurer can say, under the terms of our policy, there's no coverage, and if there's been a determination there's no coverage for this liability, and you can say, sorry, you've got a policy and I can still recover, that's one heck of a policy. Well, I mean, this was a policy that, as Perma likes to point out, they heavily negotiate with their member cities, and obviously they could change the language to not provide any benefits. Well, whenever you buy an insurance policy, you negotiate it. But if there's no coverage, there's no coverage. If the coverage is for auto accidents and someone falls down off a building because they're drunk, there's no coverage. And they're saying there's no coverage here. Yeah, I understand. I do think it's an interesting point, and I think it's one that was discussed in the Shapiro case, which we did cite in this matter, which talks about essentially sort of a vesting theory, really, which is at the time that the accident occurs or the covered claim arises, at that point the injured party, who may not receive a judgment for many years later, which is exactly what happened here, at that point they have rights. It's like Social Security. I mean, I'm vested with these rights, and so therefore, if it ever happens, I'm going to get it without due recourse, whether it's covered or not. Well, what Shapiro says is that whatever the parties do later doesn't affect that right. It actually arises at the time of the injury or the accident. Well, I'll have to read Shapiro with this. Yeah. Why don't you have to bring a direct action against them directly instead of trying to use the garnishment rules? You mean to go to state court and bring a written mandate and so forth? Well, it would render a federal judgment, it would be an interesting way to enforce a federal judgment because the way I've read these cases is that absolutely you do not have to go to state court to try and chase the satisfaction of a federal judgment. Well, if you can find a collectible asset. Right. But that assumes the answer. In other words, on my example to your opponent, a bank account, which is a debt. The bank is not holding money of the depositor. It's a debt that they owe the depositor. And if you run over to garnish that, and the bank has already gotten the litigation with the depositor, and there's a court decree that says, bank you don't owe that person anything, you're going to not have anything to garnish. Why isn't that the situation here? You've got a decision saying there's no obligation. As for the city, there is an obligation. I come back to the same thing. They contracted to cover claims when there's a judgment. They contracted to cover the city. The city purchased certain coverage. And a claimant has to have a claim that comes within that coverage. And there's a decision now that this does not come within the coverage. So how do you get at it in the face of that decision? Those are the parties to the contract, defining the contract. You haven't said it was collusive, that they did that to cut you out. That was at arm's length. Obviously, the city wasn't going to give away the $3 million. We have no knowledge whatsoever of what went on there. We weren't there. We haven't had any information about it, except what's come out on this record. But the short answer really is, and I don't want to sound repetitious, but I mean, that's the relationship that they contracted for. We took the loss in 1991 in terms of this. And it turns out there was coverage under the policy for that. We couldn't get a judgment until years later. We pursued it because both PERMA and the city contracted to provide this benefit for judgment creditors. To the city? For judgment creditors. It says for judgment creditors. Well, no, it's a benefit for the city. You're protecting the city. Well, it protects the city in the sense that it's actually called the bankruptcy provision, which is ironic since that's why we're here. But they protect the situation where the insurer is insolvent. There'd still be money there to satisfy the judgment. So that's the situation. You're saying you have a contractual claim against PERMA? You're a party to this contract as a third-party beneficiary, and you have a contractual right to cover against PERMA? Yeah, the San Diego housing case. Am I right about that? I believe, if I understand Your Honor correctly, yes. I'm trying to understand your position. You claim that because the PERMA memorandum provides for third-party beneficiary rights, that you have a contractual right to cover, to collect against PERMA? Yes, that both PERMA and the city intended benefits. Okay. Now, one of the things they say is to the extent that you claim some contractual right to cover, you didn't comply with the California notice of claim statute asserting your right to contractual damages. What's the answer to that? The answer is the purpose that was being engaged in here was to satisfy a federal civil rights judgment, a federal question judgment. If you're claiming a contractual right under the policy? Well, yeah, we ask for the benefits under the contract, which both parties we contend intended to benefit us with. And why are you relieved of the duty of making a contractual claim under the statute? Right. Because it's not a federal, it's not a contract action in the sense that Your Honor seems to be. Oh, garnishment. I'm sorry? I'm sorry. We were proceeding under Federal Rule 69, a federal purpose to satisfy a federal judgment. There was an asset there that would do just that. That's the garnishment theory. Right. Okay. If the garnishment theory is out because they haven't been found to owe you any money, then the next theory is you have a third-party beneficiary right. So I think the district judge would still have the power to collect that unless it's a separate suit. And that's what PERMA has argued is that this has to be a separate suit brought in state court where we can go spend several more years chasing a writ of mandate. And then after we get an order to pay them, we can file another writ of mandate to go through the entire appellate process again, demanding that they pay it. So that's what would happen to a federal judgment. We would be left with no remedy at all in terms of a federal judgment, federal question judgment, I might add. If it was a diversity action or something, obviously the answer might be different. But here, for the federal purpose involved, the district judge, as I understand it, is entitled to use garnishment attachment. I've forgotten all the other things that are mentioned in the Peacock case. But there's a succession of things that the federal courts have historically been allowed to do to satisfy their own judgments. That's what happened here. Well, I'm glad you admit that this is a collection case because all you're doing is trying to collect money from someone who may owe it. And in this case, the city is in bankruptcy. You can't get it there right now. So you want to use garnishment. Now, is the garnishment because of the language of the contract and that you're a third party beneficiary of that? I want, because we've confused, maybe I've confused the two. Is that the way you're looking at it? We look at it as a third party beneficiary type relationship with the intended beneficiary being the judgment creditor. The two parties intending to benefit the judgment creditor. And what's that third party beneficiary right of yours based upon? Absolute liability of the fund to pay you for what? For a covered claim under the policy. For a covered claim. Right. Okay. And so, and does the policy give you the right to sue them directly for that? I believe it does. So you're suing directly for a violation of a fair housing act. Judgment that you, the judgment amount that you received against the city. We do not contend with the perma viola of the fair housing act. What we contend is, is that they contracted to pay that type of judgment. And that therefore there's a residue of money there that's. And you can sue them directly as a third party beneficiary. Yes, I believe their policy so states. And you don't have to comply with the claim statute when you claim these contractual rights? Not when you're satisfying a federal judgment, no. Because otherwise, I mean, what if the California legislature passed a statute that simply says, fair housing act judgments rendered by federal courts only have to comply with claims notices or are not collectible. I don't know what that has to do with it. You're claiming third party beneficiary rights under the memorandum of agreement. And you've asserted these contractual rights without complying with the contractual claim requirements. Right, because of the federal purpose. What's the federal purpose? You've finished with the federal purpose. You're talking about bucks, state bucks, federal bucks. They're all bucks. All you want is someone to put them in your hand. Show me the money. Show me the money says, use garnishment. Garnishment and the federal and the state law says how you get money has nothing to do with fair housing, has nothing to do with anything but bucks. So how do you get your bucks? You have to follow the law to get money, not to seek regress for fair housing violations. That's already been done. It's been transferred and transmuted into dollars. And you admitted this is a collection process, not a fair housing act process. So where's the federal issue? It's how do I get my dollars? It's a federal purpose to satisfy federal question judgments. Oh, it could have been judgment for anything. I mean, when you get a judgment, it's dollars. I mean, does it have a little dollar on it with a little tick on it that says this is a fair housing dollar? And if so, and you can't go to state, is that it? Well, it's a federal question judgment. So, yes, it is in a separate category. I don't know if it has any. How does a fair federal question judgment have anything to do with the fact that it's $3 million? It's $3 million no matter where it came from. If it came from gambling or prostitution, it's still $3 million and you're trying to collect it. That part's true. We're trying to collect it. The only thing I'm suggesting is that it is a proper federal purpose for a district judge to, if there are assets that will satisfy one of their judgments, to go after them. That would be fine if you're in court, and that gets you back to the garnishment versus some other theory. But the point is that you sued PERMA, which is a public entity. And the California code required before you sue a public entity, you give notice ahead of time. So my question to you is, did you comply with that statute before you sued PERMA? I believe we did, in practical effect and the way the statute works, which is to provide them notice that we were going to go after them for this money. Yes, we did do that. They, at that point, I believe, had an obligation to tell us that if they thought the claim was deficient. And we did point that out in the briefing. So you notified PERMA before you filed in federal court? Before we began the garnishment proceeding to go after PERMA, yes, that's correct. And what form did that notice take? It was a letter. Is that in the record? I believe it is. I'm not sure I can find it. OK, no, that's just a question. So you think that the record would support a finding that, or a holding, that you complied with Section 905 before you sued PERMA? Yes. OK. Can you tell me what the letter said? Don't go looking for it, but can you tell me in substance what the letter said? Yeah, I think it recited the nature of our contention in terms of what they owed and what the amounts were and so forth, the details of what we were about to do. That's my recognition of it. Who was that subject? It may have been addressed to the treasurer of PERMA. I do not recall. We had some confusion over who was supposed to get what at PERMA, and I think we ended up serving them twice with letters and garnishment papers, I think. My memory serves accurately, and I can't specifically remember. I know that the treasurer was served. I do not recall whether anyone else was. Served with what? Served with this notice, and then also later the garnishment papers. That's my recollection. I'm just working from memory at this point, but I think that's right. On the issue of the arbitration, which we did talk about a little bit, it is worth noting that the California Supreme Court did look at that issue not long ago, the Vandenberg case. And there, they put a lot of emphasis on the fact that there was an arbitration, on the fact that it was an arbitration in order to not give issue or claim preclusion from those proceedings. And I would suggest here that, given the record the district judge had before it, which is cryptic at best, and there was no transcript, but even if one looks at the actual decision itself, it's at Solicitage 2 and 3, and so I really don't know what they're referring to there, and they don't explain that. So it's, I think, quite important to be fair to the district judge there, that there really was nothing from which you could determine what issues, if any, had been, in fact, litigated in the arbitration, and as I understand it, was Perma's burden to show precisely the issues if they wished to claim those issues, and or if they wished to claim that there was claim preclusion as well, because the only thing that could have been before Perma at that point or before the arbitrators could have been defense costs. There could not have been anything else, because the judgment didn't exist until a year later. So it could not have been that, but I think that the record there simply doesn't support Perma's contentions, because it's just too hard, and, in fact, it's essentially impossible to figure out what that arbitration really covered and did not cover, apart from its other problems. The district judge's order also is supportable for the reason that, obviously, we could not have been at that arbitration. We would have had no standing, had we even known about it, to have been there. And at the time, our relationship was very adversarial with the city, so our interests were not the same, until we had a judgment, I guess, arguably, at that point. If there's a fair part of it, then you can find some community of interest, but that certainly was not the facts in 1993 on that arbitration issue. And then, lastly, the intentionality issue. I just want to say a brief word about that. It's always been our position, there was, of course, substantial evidence in the trial, adduced from which a jury could have concluded that there was an intentional act here by the city in terms of halting the SilverStage development's use of RHCP's financing. But the problem really is, is that the judge, for whatever reason, instructed on an effect or impact theory, and obviously, Kermit could have defended, could have been involved in all that process, but they were not. But the mere fact that there's evidence that supports an inference, or evidence that would have supported a certain verdict, I don't think is dispositive here. I think what's dispositive is the fact that the judgment itself, what there is to look at, which is the instructions, are all clearly based on impact or effects. So I did want to point that out. All right, thank you. Just a couple of quick points. In the opening brief at page 10, we cited their notice of motion, which makes it very clear that the theory was garnishment of money due to the city of Desert Hot Springs by PERMA. And we go on to the next page or two. I think it's pretty clear that the plaintiff understood that that antecedent debt is necessary to have a garnishment action. Now, as for what was arbitrated, the arbitration briefs were in front of the court, including all the exhibits. I think it's pretty clear that the arbitration panel decided there's no duty of defense. That means there's not even a possibility of coverage for indemnity, because that's the test under California law. The numbers of the cases are all explained in the brief, Silver Sage 1 being a petition for writ of mandate originally by the plaintiffs, Silver Sage 2 being this federal action, and Silver Sage 3 being a state law action after the state law appendant claims were dismissed without prejudice by the federal court. There was a question about Shapiro. Shapiro is a case about reformation of the policy. Parents have an auto policy, and it has an endorsement in it saying, no resident in your household under 25 is covered. They have a son who's in the armed forces who's visiting, and under the California law, because he's visiting, he's actually stationed away from the home. He's not considered a resident. So after the accident, the insurance company brings a reformation action and tries to substitute in a new endorsement that says, no one under 25 is covered, regardless of residency. And the insurer won, but didn't bring the plaintiff into the action. Now, that's something that alters the rights of the parties. That's not a determination of whether coverage existed at the time the complaint was filed. And for that reason, I believe Shapiro is distinguishable. With that, I'll submit, unless there are questions, Your Honor. Thank you. Well, question. Would your opponent says that Silver Sage did comply with Section 905 prior to suit? Would you agree? No, I think that they took the position they were exempt from it under the Federal Anti-Defamation Theory. If they are trying to claim confidential compliance by virtue of a letter, they would be required to bring that to the attention of the court in the action and to show that it complied with the requirements of 910, which include giving the address of where the notices should be sent, setting forth all the theories of liability, setting forth the amount claimed, all those things. I don't frankly recall what was in the earlier correspondence or if it triggered that kind of result. But that hasn't been a claim that's been made so far up to this point. They haven't ever relied on any letter like that. Well, Civil Rule, Civil Procedure 69 in the case, they admit that they're trying in aid of execution to go through the Federal process that requires that the practice and procedure of the state be complied with. So you're saying it was not complied with and is provided for in Rule 69? That's right. One quick question. If your argument on arbitration fails, i.e., that there's no issue preclusion, then how do you analyze this? Then I think they would have to bring, if there was no issue preclusion, then they'd have to bring an action directly, I believe, in state court, and they'd have to try the coverage issues, whether or not it's expected or intended, whether or not it's a plain use claim. Because if the coverage issue is not determined by arbitration, then you have to have a determination of coverage, because you obviously have raised that issue. That's right. And what do they have a right as a third party to sue you directly to determine coverage? Yes, I believe they do. But they would only be able to recover money to the extent of coverage afforded by the memorandum. That's the limiting language. Okay. And the writ of garnishment is not such an action that they can determine that coverage in? No, because the writ of garnishment assumes the debt already exists, for one thing. And for another thing, the direct action, you're not allowed to bring an action under the direct action clause until after there's a final judgment against the insured. Then you can bring a direct action against the, in this case, not the carrier, but the pool, to the extent of coverage afforded. Well, there is a final judgment against the insured. It's in bankruptcy right now, but there is a final judgment. Right. And I'm saying that the direct action clause in the conditions portion of the memorandum of coverage is conditioned on the third party establishing coverage. You only get to recover to the extent of coverage. And in this case, that's been decided. Elsewhere in the document, it said, here's how we decide coverage issues. If the board denies coverage, it goes to, it does not go to court. It goes to binding arbitration. That's final. All right. Case just argued will be submitted. And for today, we stand to recess.
judges: Brunetti, Tg Nelson, Silverman